IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:26cv0061

| | |
|---|---|
| CELANESE CORPORATION, NORTHROP GRUMMAN SYSTEMS CORP., and CHEMTRONICS, INC., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

# COMPLAINT

For its Complaint, Plaintiffs Celanese Corporation ("Celanese") (whose rights and obligations for the Site have been assigned to Chemtronics), Northrop Grumman Systems Corp. ("NG"), and Chemtronics, Inc. ("Chemtronics") (collectively the "Plaintiffs"), by and through counsel, allege as follows:

## STATEMENT OF THE CASE

1. This is a civil action pursuant to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), relating to the release and/or threat of release of hazardous substances from a facility known as the Chemtronics Superfund Site, which consists of certain property located in Swannanoa, Buncombe County, North

Carolina, as well as any area where hazardous substances that have or may have migrated from the Chemtronics Superfund Site have come to be located ("Chemtronics Site"). The hazardous substances at the Chemtronics Site have contaminated the soil and groundwater at the Chemtronics Site and have threatened the public health and the environment. Defendant United States of America (the "United States"), generated and/or arranged for the disposal of materials containing hazardous substances that were disposed of at the Chemtronics Site.

2. The Plaintiffs seek contribution from the Defendant pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for past and future response costs incurred and to be incurred by the Plaintiffs for response activities undertaken and to be undertaken at the Chemtronics Site, along with a declaration as to the Defendant's liability and an allocation of past and future response costs among all parties. The Plaintiffs intend to provide a copy of this Complaint to the Attorney General of the United States and the Administrator of the Environmental Protection Agency per Section 113(l) of CERCLA, 42 U.S.C. § 9613(l).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), providing federal jurisdiction over controversies arising under CERCLA, and pursuant to 28 U.S.C. § 1331, providing federal jurisdiction over controversies involving questions of

federal law. The Court also has jurisdiction over the request for declaratory relief under Section 113 of CERCLA, 42 U.S.C. § 9613 and 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c), because the United States conducts business in this district, the Chemtronics Site is located in this district, the alleged releases and threatened releases of hazardous substances occurred in this district, and/or a substantial part of the events or omissions giving rise to the causes of action alleged in this matter occurred within this district.

## ALLEGATIONS

5. The Chemtronics Site is located at 180 Old Bee Tree Road, Buncombe County, North Carolina, near the town of Swannanoa, North Carolina, also known as Chemtronics Superfund Site (EPA ID# 095-459-392). The Chemtronics Site was initially defined to include land encompassing approximately 1,065 acres of rural land within the southern Appalachian Mountains depicted on Appendix A as the "Chemtronics Property." Subsequently, EPA redefined the Chemtronics Site to encompass a reduced footprint of approximately 541.9 acres, also depicted on Appendix A as the "Chemtronics Site." (Appendix A is attached to the Proposed Consent Decree filed contemporaneously herewith).

6. From the 1950s to the 1990s, the Chemtronics Site operated as a manufacturing facility for various munitions such as explosives, flares, military incapacitating agents, and various chemical intermediaries.

7. From 1952 to 1959, the Chemtronics Site was owned and operated by Oerlikon Tool and Arms Corporation.

8. From 1959 to 1965, Celanese owned and operated the Chemtronics Site.

9. From 1965 to 1971, Northrop Carolina, Inc., a predecessor of Northrop, owned and operated the Chemtronics Site.

10. From 1971 to 1978, Airtronics, Inc., a predecessor of Chemtronics, leased the Chemtronics Property from Northop Carolina, Inc. and continued operations at the Chemtronics Site.

11. Airtronics, Inc., acquired the Chemtronics Property from Northrop Carolina, Inc. in 1979.

12. Chemtronics ceased all manufacturing operations at the Chemtronics Site in 1994 but maintains ownership of the Chemtronics Site.

13. From at least 1962 to 1980, the United States Department of Defense, and certain of its branches, including the Army, Navy, and Air Force (the "DoD"), entered into contracts with Plaintiffs for the production of various munitions including grenades, flares, tetryl pellets, DATB/PBX explosives, DIPAM and HNS

4

explosives, CS-1 tear gas, and BTTN and other propellants produced at the Chemtronics Site.

14. Historical operations resulted in the release of hazardous substances into the environment at the Chemtronics Site.

15. In December 1982, the Chemtronics Site was listed on the National Priorities List pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") Section 105, 42 U.S.C. § 9605, designating it a "superfund" site.

16. In October 1985, Chemtronics and NG entered into an Administrative Order on Consent ("1985 AOC") with the United States Environmental Protection Agency (the "EPA") to perform a Remedial Investigation ("RI") and Feasibility Study ("FS") (collectively "RI/FS") with respect to certain waste disposal areas at the Chemtronics Site.

17. On March 22, 1989, EPA issued a Unilateral Administrative Order ("UAO") directing the Plaintiffs to implement response actions under CERCLA at the Chemtronics Site.

18. In 2008, EPA and the Plaintiffs entered into an Administrative Order on Consent ("2008 AOC") requiring the Plaintiffs to conduct an additional RI/FS at the Chemtronics Site. As the result of the additional RI/FS, a modified remedy was

selected at the Chemtronics Site, which was memorialized in EPA's September 2016 Second Amended Record of Decision ("2016 AROD").

19. In 2020, EPA, Chemtronics and NG entered into a Consent Decree ("2020 Consent Decree"), in which Chemtronics and NG agreed to perform the required work to implement the 2016 AROD selected-remedy. The 2020 Consent Decree was entered by the United States District Court for the Western District of North Carolina in 2022. *See* Consent Decree, *United States v. Chemtronics, Inc. and Northrop Grumman Systems Corp.*, 20-cv-272-MR, Order at ECF No. 20 (April 14, 2022 W.D.N.C.).

20. To date, Plaintiffs have incurred more than $31,000,000 in response costs at the Chemtronics Site.

21. The response costs incurred to date by the Plaintiffs are necessary to address the release and/or threatened release of hazardous substances into the environment at the Chemtronics Site, and are required by EPA in the 1985 AOC, the 2008 AOC, the 2020 Consent Decree, and otherwise, and as such are consistent with the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and amendments thereto ("NCP").

22. In addition, the Plaintiffs have voluntarily incurred and will continue to incur additional recoverable response costs, including attorney's fees and expenses

to search for other PRPs associated with the Chemtronics Site and administrative functions, that are closely tied to the response activities at the Chemtronics Site, which the Plaintiffs are also entitled to recover against parties liable under CERCLA.

23. The Plaintiffs will continue to incur response costs to conduct response actions at the Chemtronics Site as required by EPA and currently anticipate incurring in excess of $22,000,000 in future response costs at the Chemtronics Site.

## COUNT I – CONTRIBUTION UNDER CERCLA

24. Plaintiff realleges and incorporates by reference Paragraph Nos. 1 through 23 of this Complaint as if fully restated herein.

25. Section 107(a)(3) of CERCLA, 42 U.S.C. §§ 9607(a)(3), provides, in relevant part, that:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section --
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances…shall be liable for -- (A) all costs of removal or remedial action incurred by… a State... not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;....

26. "Disposal" is defined in CERCLA Section 101(29) by reference to the Solid Waste Disposal Act ("SWDA"). 42 U.S.C. § 9601(29). The SWDA defines "disposal" as "the discharge, deposit, injection, dumping, spilling,

7

leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

27. "Facility" is defined in CERCLA Section 101(9) as "any building, structure, installation, equipment, pipe or pipeline" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed...." 42 U.S.C. § 9601(9).

28. "Hazardous substance" is defined in CERCLA Section 101(14) by reference to other federal statutes and by reference to a list of substances published by EPA at 40 C.F.R. § 302.4. 42 U.S.C. § 9601(14).

29. "Owner" or "Operator" is defined in CERCLA Section 101(20) as "... in the case of an onshore facility or an offshore facility, any person owning or operating such facility...." 42 U.S.C. § 9601(20).

30. "Person" is defined in CERCLA Section 101(21) as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(20).

31. "Release" is defined in CERCLA Section 101(22) as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)...." 42 U.S.C. § 9601(22).

32. "Response" is defined in CERCLA Section 101(25), and includes "removal" actions, "remedial" actions, and enforcement activities related thereto. 42 U.S.C. § 9601(25).

33. The Chemtronics Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

34. There has been a "release" and/or a threatened "release" of "hazardous substances" at the Chemtronics Site which has caused the incurrence of "response costs" by the Plaintiffs, within the meanings of Sections 101(22), 101(14) and 107 of CERCLA, 42 U.S.C. §§ 9601(22), 9601(14) and 9607.

35. Plaintiffs are a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

36. Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

37. Pursuant to CERCLA, 42 U.S.C. §§ 9607(a)(3), Defendant is liable as an arranger or generator of materials containing hazardous substances, which materials were disposed at the Chemtronics Site.

38. As a result of the release and threatened release of hazardous substances at or from the Chemtronics Site, the Plaintiffs have incurred response costs and will continue to incur costs of "response," as that term is defined by Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

39. The response costs incurred by Plaintiffs in connection with the Chemtronics Site are consistent with the NCP.

40. Pursuant to CERCLA Sections 107 and 113, 42 U.S.C. §§ 9607 and 9613, Defendant is strictly, jointly and severally liable for the voluntary past and future response costs incurred and to be incurred by Plaintiffs in response to the release or threatened release of hazardous substances at and from the Chemtronics Site.

41. Sections 113(f)(1) and (3)(B) of CERCLA, 42 U.S.C. §§ 9613(f)(1) and (3)(B), provide, in relevant part, that:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a)....
>
> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement....

42. Plaintiff has resolved its liability to EPA for matters covered in 1985 AOC, the 2008 AOC, and the 2020 Consent Decree.

43. Defendant is a liable party under CERCLA but has not resolved its liability to Plaintiff or EPA.

44. To date, Plaintiff has been compelled to incur and/or otherwise pay over $31,000,000 in response costs at the Chemtronics Site under the 1985 AOC, the 2008 AOC, and the 2020 Consent Decree.

10

45. Plaintiff is entitled to contribution from Defendant under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for Defendant's respective equitable shares of all costs and damages incurred by Plaintiff, including applicable interest as provided for in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

WHEREFORE, Plaintiffs respectfully request that this Court enter a declaratory judgment against Defendant finding that it is liable under CERCLA and is obligated to pay for its equitable share of all past and future response costs, including appropriate pre-judgment interest, associated with the Chemtronics Site. Plaintiffs further request that this Court award interest and costs of suit, including reasonable attorney's fees and consultant fees as permitted by law; and order any such other relief as the Court may deem just and appropriate under the circumstances.

## COUNT II – DECLARATORY RELIEF UNDER CERCLA

46. Plaintiff alleges and incorporates by reference Paragraph Nos. 1 through 45 of this Complaint as if fully restated herein.

47. There is a present and actual controversy between Plaintiffs and Defendant concerning their respective rights and obligations with respect to the response costs associated with the Chemtronics Site.

48. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides, in relevant part, that:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

49. Plaintiffs seek a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against Defendant holding it liable for its equitable share of response costs, that will be binding in any subsequent action to recover further response costs.

50. Plaintiffs are entitled to judgment against Defendant for past and future response costs incurred in connection with the Chemtronics Site.

WHEREFORE, Plaintiffs respectfully pray that this Court enter a declaratory judgment against Defendant finding that it is liable under CERCLA and is obligated to pay for its equitable share of all past and future response costs associated with the Chemtronics Site. Plaintiffs further request that this Court award interest and costs of suit, including reasonable attorney's fees and consultant fees as permitted by law; and order any such relief as the Court may deem just and appropriate under the circumstances.

This the 27th day of February 2026.

**VAN WINKLE, BUCK, WALL, STARNES AND DAVIS, PA**

*/s/ Stephen B. Williamson*
Stephen B. Williamson, NC Bar #20203
11 North Market Street
Asheville, North Carolina 28801
Telephone: (828) 258-2991
Facsimile: (828) 255-0255
swilliamson@vwlawfirm.com

*Attorneys for Plaintiffs*